IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  03-cv-02579-RPM

NATIONAL OILWELL VARCO, L.P.,

      Plaintiff,

v.

PASON SYSTEMS USA CORP.,

      Defendant.

---

FINDINGS, CONCLUSIONS AND ORDER FOR FINAL JUDGMENT

---

      The plaintiff in this civil action, National Oilwell Varco, L.P. (Varco) is the owner of U.S. Patent 5,474,142 ('142 Patent).  The defendant is Pason Systems USA Corp. (Pason).

      After the jury verdict of November 6, 2008, rejecting the defendant's invalidity defenses and awarding damages for infringement of claims 1, 11 and 14 of the '142 Patent, Pason filed a request for reexamination of those and other claims by the PTO.

      On December 14, 2009, the PTO issued an office action which, *inter alia*, rejected Claims 1 and 11 of the '142 Patent as anticipated by U.S. Patent No. 1,891,329 ("LeCompte") and rejected Claim 14 as obvious over U.S. Patent No. 3,265,359 ("Bowden '359"), in view of U.S. Patent No. 2,005,889 ("Dillon"), and U.S. Patent No. 3,550,697 ("Hobhouse"). (Def.'s Ex. E-21). Varco responded to that office action, asserting distinctions between the teachings of the prior art and the claims of the '142 Patent and arguing that evidence of secondary factors (i.e.

commercial success, long-felt need, copying) weighed in favor of a finding of non-obviousness. (Def.'s Ex. E-22).

On February 22, 2010, the PTO issued a final office action which maintained the rejection of Claims 1 and 11 as anticipated by LeCompte, but withdrew the obviousness rejection of Claim 14 in light of the patentee's showing of secondary considerations. (Def.'s Ex. E-24). Varco subsequently amended Claims 1 and 11 of the '142 Patent to overcome the rejection based on LeCompte (Def.'s Ex. E-25). The PTO then determined that Claims 1 and 11 of the '142 Patent were "patentable as amended." (Def.'s Ex. F-1).

After Claims 1 and 11 of the '142 Patent were amended to overcome the rejection, the Plaintiff withdrew its infringement claims in this action as to Claims 1 and 11.  The Plaintiff now seeks entry of judgment based on the jury's verdict of infringement of Claim 14 only.  The jury was not asked to award damages separately for each patent claim infringed.

Pason has asserted that this Court should not enforce the patent because Bobby Bowden, the inventor, knowingly failed to disclose two prior art patents, LeCompte (Def.'s Ex. C-20) and Dillon (Def.'s Ex. C-19).

Evidence in support of the claim of inequitable conduct was presented at a bench trial in November, 2011, and written arguments have been submitted.  After full consideration of the relevant evidence admitted at both trials, the Court finds and concludes that Pason has failed to prove the defense of inequitable conduct in the proceedings leading to the issuance of the 142 Patent.

In *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (2011) (en banc), the Federal Circuit Court of Appeals established the requirements for the proof of the defense of

inequitable conduct. The defendant must by clear and convincing evidence prove deceit on a matter that was material to the examiner in determining patentability.

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1287. "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* at 1290 (quoting *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed.Cir.2008)).

In *Therasense*, the Federal Circuit held that "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." 649 F.3d at 1291. "[P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id.  The Federal Circuit explained:

> . . . in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.

649 F.3d at 1291-92 (citing Manual of Patent Examining Procedure §§ 706, 2111 (8th ed. Rev.8, July 2010).

"Unlike validity defenses, which are claim specific . . . , inequitable conduct regarding any single claim renders the entire patent unenforceable." *Therasense*, 649 F.3d at 1288 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988)).

Bowden hired a patent agent, Marcus Bates, to arrange for a patent search. His report, dated September 2, 1992, identified patents that may be considered relevant prior art, including LeCompte and Dillon. (Def's Ex. A-1).

Bowden retained a patent lawyer, Donald Comuzzi, who filed the application for this patent on April 19, 1993. There was no prior art reference in the application. The '142 Patent issued on December 12, 1995. At the jury trial in 2008, Bowden testified that he had one brief telephone conversation with Bates and did not give him a disclosure of the invention which had not yet been developed into a prototype. Bowden also said at that trial that he retained Comuzzi in May, 1992, and provided him with the Bates report immediately after receiving it.

Comuzzi is dead. Chris Makay, a patent agent working as a clerk for Comuzzi while attending law school, did most of the drafting of the Bowden application. He testified that he had no recollection of seeing the Bates report or that it was in the Comuzzi office file.

At the time of the jury trial counsel assumed that Marcus Bates had died. In proceedings in another jurisdiction other counsel learned that he was still living but in failing health. His son, Marcus Bates, Jr., found the working papers for the work done for Bowden. Those documents were received in evidence in the bench trial. (Defendant's Ex. F-2). Bates testified, with difficulty, at a videotaped deposition. His recollection was limited. He did identify his handwriting on some of the documents.

The Bates file papers contradict much of Bowden's trial and deposition testimony.

Documents in Bates' file show that Bowden contacted Bates in March 1992 (not 1991), and that Bates and Bowden met <u>in person</u> for an initial conference on June 19, 1992. (Def.'s Ex. F-5; Def.'s Ex. F-20 at F-2-0024 – 0026). The Bates file includes three pages of detailed

drawings of the invention with handwritten notes describing its operation. (Def.'s Ex. F-2 at F-2-0009-0012).  John Berryhill, Bowden's former son-in-law, identified the handwriting on the drawings as his handwriting.  (J. Berryhill Dep. Test. 82:1-85:25). Berryhill worked with Bowden on initial development of the Wildcat automatic drilling system. (Berryhill Dep. Test. 79:15-23).

The Bates file included a written checklist, with handwritten notes reflecting the date (June 19, 1992) and Bowden's answers to questions about topics such as sole inventorship, prior art, reduction to practice, and public disclosure of the invention. (*Id.*). Those notes indicate Bowden told Bates the invention had been reduced to practice approximately four months earlier (i.e., in February 1992) and publicly disclosed approximately two months before the June 19, 1992 conference.

The Bates' file includes a copy of a letter from Bates to Bowden dated June 23, 1992, in which Bates summarized their discussion at the June 19, 1992 conference. In that letter, Bates confirmed that he had provided Bowden with a copy of a "Very Frank Memorandum" – a document which Bates routinely gave to clients to explain concepts of patent law.  (Marcus Bates, Sr. Dep. at 22:3-21).

Documentary evidence shows that after the initial conference on June 19, 1992, Bates arranged for a patent search directed primarily "to patents in which the pressure drop across the bit face is used to produce a signal which is connected to control cable drum operation and hence, rate of penetration or W.O.B. [weight on bit]." (Def.'s Ex. A-1 at p. 1).

These papers and other inconsistencies in Bowden's sworn testimony on the many occasions he has been asked about the application support the view that he has tailored his

version of these events to avoid any admission of facts that would support a finding of invalidity or improper conduct.  The pivotal question is whether there is adequate evidence to infer a specific intent to deceive the patent examiner.  The primary obstacle to that finding is Bowden's explanation of his view that the prior art references are distinguishable from his invention contained in the three pages of Defendant's Exhibit F-4, also Plaintiff's Exhibit 501.  Those three typewritten papers on Bowden's company letterhead bear no date but there is a facsimile transmission date of March 25, 1993.  These statements and Bowden's trial testimony preclude a finding that Bowden knew that the omitted disclosures would have defeated his patent application.

Bowden's expressed analysis is not unreasonable.  It is notable that when Pason initiated its first reexamination request it based it on U.S.Patent No. 3,223,183 (Varney) and did not call attention to either LeCompte or Dillon.

There is doubt as to the materiality of the omission of this prior art.  The PTO's final action on reexamination approved claims 1 and 11 after an amendment, adding the words "with direct effect at the drill bit associated with the drill string."  That clarification did little to affect the interpretation of these claims given to the jury in the Court's instructions.

The Bates' papers arguably contradict the Bowden testimony concerning the date of first public use or sale of his invention which the jury must have believed in rejecting the invalidity defense under 35 U.S.C. § 102(b).  Testimony from Brooks Doughtie, Eddy Nink and John Berryhill supports the challenge to Bowden's trial testimony.  To refuse enforcement of the patent on that basis, however, would impugn the jury verdict which this Court must not do.

The defendant having failed to prove the defense of inequitable conduct by clear and convincing evidence, the plaintiff is entitled to the entry of a final judgment on damages. The jury awarded lost profits as of November 6, 2008, of $14,320,283. At the bench trial Varco and Pason stipulated that $1,325,712 may be added for rental days that Pason knew the users of its Auto Drillers were operating under the algorithm before it was changed to make the device non-infringing. Pason's records showed 7,907 rental days that could not be identified according to the algorithm used. Those should be added making the supplemental lost profits of $1,768,270.

There is a dispute over the appropriate prejudgment interest rate.

Pason urges the court to employ the treasury bill interest rate as the prejudgment interest rate, arguing the T-bill rate is an appropriate baseline investment rate, absent evidence that the patent holder was forced to borrow at a higher rate or would have invested at a better rate.

The Plaintiff contends the appropriate prejudgment interest rate is either the prime rate (i.e., a daily rate of $1,698), or the prime rate plus one percent (i.e., a daily rate of $2,314).

Application of the prime rate results in prejudgment interest in the amount of $3,160,532 through March 12, 2012, plus the daily rate of $1,698 for every day thereafter until entry of judgment.

The Plaintiff seeks enhanced damages (i.e. treble damages) pursuant to 35 U.S.C. § 284 and attorneys' fees, arguing that such damages are an appropriate remedy for Pason's willful post-verdict infringement. That request is denied. While the jury decided for the plaintiff, the verdict may be questioned by reasonable jurists. That is the reason this Court attempted to expedite an appeal in this very close case.

The post judgment rate as of April 30, 2009 is not applicable because the Court vacated the final judgment entered on April 30, 2009, after the Federal Circuit dismissed the appeal under Fed.R.Civ.P. 54(b).

Varco asks for a permanent injunction, contending that it is appropriate relief for its intangible losses from price erosion of its products, loss of market share and injury to reputation. It is undisputed that the Pason Auto Driller now on the market does not infringe and that no use of the prior version's algorithm is possible. There are only a few months remaining for the life of the '142 Patent. There is no evidence that injunctive relief is necessary or in the public interest. It would be difficult to describe the scope of injunctive relief that would be appropriate and the harm to Pason that may be the result of public misinterpretation of the reason for and effect of an injunction outweighs the plaintiff's need for further protection.

Accordingly, it is

ORDERED that final judgment shall enter pursuant to the jury's verdict awarding Plaintiff National Oilwell Varco, L.P. damages in the amount of $14,320,283 for infringement of Claim 14 of U.S. Patent 5,474,142; supplemental lost profits in the amount of $1,768,270; prejudgment interest in the amount of $3,326,936, for a total award of $19,415,489.00; it is

FURTHER ORDERED that the Plaintiff's request for permanent injunctive relief is denied; it is

FURTHER ORDERED that costs shall be awarded to the Plaintiff upon the filing of a bill of costs pursuant to D.C.Colo.LCivR 54.1.

DATED:   June 18, 2012

BY THE COURT:

s/ Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge